United States Guarantee Co. v. Commissioner.
United States Guar. Co. v. Commissioner
Docket No. 15016.
United States Tax Court
1949 Tax Ct. Memo LEXIS 180; 8 T.C.M. (CCH) 510; T.C.M. (RIA) 49131; May 20, 1949
John S. Breckinridge, Esq., for the petitioner. W. A. Schmitt, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion KERN, Judge: Respondent determined a deficiency in excess profits tax for the calendar year 1942 in the amount of $18,710.25, and an overassessment of income tax for that year in the sum of $6,437.63. By amendments to his answer, respondent seeks to increase the deficiency in the alternative amounts of $40,196.40, or $62,111.81. Petitioner claims overpayment of excess profits tax, and, under its theory of the case, recognizes that it would *181 be subject to a deficiency in income tax. One assignment of error having been abandoned by petitioner, [1] the following issues are presented for our disposition: 1. Whether the deduction for "losses incurred" in 1941 and 1942 should be allowed in the amounts required to be included in the unpaid and outstanding losses appearing on the form of annual statement approved by the National Association of Insurance Commissioners, as petitioner contends, or whether it should be determined on the so-called "case basis", hereinafter described, as respondent urges; 2. Whether the same treatment should be accorded "losses incurred" for the base period years 1936-1939, for the purpose of computing petitioner's excess profits tax credit, notwithstanding that settlement by informal agreement of the parties of liability of income tax for some of the years was on a different basis; 3. Whether, for purposes of computing its excess profits tax credit, deductions allowable for loss adjustment expenses *182 for the years 1936 to 1939 should be determined on an "incurred basis", as petitioner argues, or on the "paid basis" as allowed by respondent, notwithstanding an inconsistent method of treatment by petitioner for income tax purposes in those years; and 4. Whether, if petitioner prevails on any or all of the previous issues, an adjustment is permitted and required under section 734 of the Internal Revenue Code. Substantially all of the salient facts have been stipulated. Others have been presented by documentary evidence offered at the hearing. The stipulated facts are hereby found accordingly. Since there is no disagreement between the parties as to any of the material facts, nor as to the amounts to be used in a Rule 50 computation, if that becomes necessary, only a general summary of the operative facts will be recited. [The Facts] Petitioner, a New York corporation, with its principal office in New York City, filed its tax returns for 1942 with the collector of internal revenue for the second district of New York. It is, and at all times herein mentioned was, engaged in the business of casualty insurance, including, among other forms of such insurance, *183 the underwriting of liability and workmen's compensation risks. Petitioner issues policies of insurance to its assureds protecting them from or agreeing to indemnify them against loss in respect of specified hazards, as well as issuing surety and fidelity bonds. However, petitioner does not retain the full liability under all such policies and bonds, but reinsures a substantial portion of such liability with other insurance companies or other reinsurers. It is an insurance company other than life or mutual as defined in section 204 of the Internal Revenue Code, and a "Casualty Insurance Company" as defined in section 310 of the Insurance Law of the State of New York. In making the annual report of its income, condition and operations for all of the years we must consider, to the Insurance Department of the State of New York, petitioner used the form required by the rules and regulations of that Department. Such form is commonly known as the "Convention Edition of the Annual Statement" and is the form approved by the National Association of Insurance Commissioners. It requires, inter alia, that liability and workmen's compensation losses unpaid and outstanding *184 at the end of the year be computed and reported on two different bases: (1) by estimating the amount of such unpaid and outstanding losses on all open cases according to appraisals made in the company's claims department and approved by its officials, generally known as the "case basis", and (2) by using such estimated amounts for all open cases arising out of policies issued prior to the second year preceding the current year and adding thereto 60 per cent of the premiums earned on liability risks and 65 per cent of the premiums earned on workmen's compensation risks in the current year and in each of the two preceding years, and deducting therefrom the losses and expenses paid up to that time in respect of such risks for the three lastmentioned years. This is generally known as the "percentage basis." The Convention Edition of the Annual Statement requires that there be included in unpaid and outstanding losses, in repect of cases arising within such three-year period, the company's estimates or the amounts resulting from the percentage calculations, whichever are higher. For sake of brevity, this can be referred to as the "statutory basis." For 1942, petitioner's losses incurred, *185 determined on the "statutory basis", amounted to $1,748,956.74. Determined on the "case basis", and as such allowed by respondent, they totaled $1,244,116.96. For the years 1936 through 1939, petitioner reported in its annual statement and on its returns losses incurred determined on the "statutory basis." For 1936, respondent allowed as a deduction losses incurred determined on that basis. For 1937 the deduction was allowed on the "case basis" with a settlement agreed to by the parties on the question of the proper treatment of unpaid losses to be carried forward from the prior year. For the years 1938 and 1939, respondent allowed losses on the "case basis." A consistent treatment of this item on the "statutory basis", together with corrections for the amount of reinsurance recoverable on unpaid losses, as to which adjustment there is no dispute, would reflect an understatement of the deduction for the years 1936 through 1938 in the respective amounts of $6,305.82, $526,135.94 and $80,880.98, and an overstatement for 1939 in the amount of $297,329.87. In its annual statements, as therein required, petitioner has reported loss adjustment expenses on the "incurred basis" and not *186 on the "paid basis." The item is carried into and reflected in the Underwriting Exhibit of the Convention Edition of the Annual Statement and required to be reported by the rules and regulations of the Insurance Department of the State of New York for such years. In accordance with the requirements of the Convention Edition of the Annual Statement and of the New York Insurance Department, loss adjustment expenses incurred are determined by adding to loss adjustment expenses paid during the year the loss adjustment expenses unpaid at the end of the year and deducting the loss adjustment expenses unpaid at the end of the previous year. The requirements for the years 1936, 1937, 1938 and 1939 were the same as those in effect for the years 1941 and 1942. For the years 1940 through 1942, respondent allowed the loss adjustment expenses on the "incurred basis." For the years 1936 through 1939, petitioner reported for Federal tax purposes loss adjustment expenses on the "paid basis", and respondent so allowed them. The loss adjustment expenses on the "paid basis" for 1936 to 1939 are as follows: Year
Paid Basis
1936
$288,393.76
1937
304,053.29
1938
347,395.06
1939
337,854.74
*187 If loss adjustment expenses were to be reported on an "incurred basis" during the base period years, petitioner's taxable and base period net income would be overstated for 1936 by $559.70, for 1937 by $18,035.53, for 1938 by $9,511.44, and understated for 1939 by $11,959.74. Under date of February 3, 1941, petitioner executed and filed a waiver of restrictions on assessment and collection of deficiency in tax and acceptance of overassessment in respect of the years 1937, 1938 and 1939. It was therein provided, in part: "The foregoing determinations are subject to acceptance by or on behalf of the Commissioner on the basis of the adjusted liability resulting in the deficiencies and overassessment hereinabove proposed and if not thus accepted will have no force or effect. If this proposal is accepted by or on behalf of the Commissioner the taxpayer agrees: (1) to make payment of the above deficiencies, together with interest, as provided by law, promptly upon receipt of notice and demand from the Collector of Internal Revenue and not to file an offer in compromise respecting such liability: (2) not to file or prosecute any claims for refund of income taxes for the years 1937, *188 1938 and 1939 in excess of the amount of the overassessment herein stated: and (3) upon request of the Commissioner to execute at any time a final closing agreement as to the tax liability, on the foregoing basis, for said years under the provisions of Section 3760 of the Internal Revenue Code. In this proceeding, petitioner seeks to maintain an inconsistent position as to these items - (1) losses incurred, and (2) loss adjustment expenses for the base period years. [Opinion] The seeming complexity of this proceeding results not from any novel legal questions presented, but rather from the intricacies inherent in the particular method of tax accounting used by insurance companies and sanctioned by the Code. [2]Internal Revenue Code, section 204; New Hampshire Fire Insurance Co., 2 T.C. 708, affd. (CCA-1), 146 Fed. (2d) 697. *189 As to the first issue, our decision in the New Hampshire Fire Insurance Co. case, supra, requires disposition in petitioner's favor. Respondent so recognizes, for, on brief, he states as follows: "This precise issue, involving the same year and with substantially similar facts, was before the Tax Court in the case of Columbia Casualty Company, Docket No. 8592, Memorandum Opinion May 13, 1948 [7 TCM 282,] (N.A.). The Court held that the taxpayer computed its unpaid losses outstanding at the end of 1942 as required by the annual report to the State Insurance Department on its form approved by the National Convention of Insurance Commissioners, and held that the computation was in accordance with Section 204 (b) on the authority of New Hampshire Fire Insurance Co. v. Commissioner (1943), 2 T.C. 708, affirmed (C.C.A. 1, 1945) 146 F. (2d) 697, no cert. "It is not deemed necessary to again argue the point, * * *" The second and third issues, as joined by the parties, present a substantially similar problem and, therefor, may be considered together. The basic problem is whether petitioner is precluded from seeking for purposes of computing *190 its excess-profits tax credit under the income method a proper determination of its base-period income, even though that approach is inconsistent with the method previously followed, and, as to some of those years, liability had been informally settled. From what we have previously said under the first issue, it follows that "losses incurred" should have properly been determined, as petitioner now urges. New Hampshire Insurance Co., supra. Loss adjustment expenses in the base period years should have been determined on an "incurred" and not on a "paid" basis. This is the clear mandate of section 204 (b) (7) and (c) (1) of the Internal Revenue Code[3] and the comparable provisions of the Revenue Acts of 1936 and 1938, and respondent does not contend otherwise. 8 Mertens, Law of Federal Income Taxation, [*] 4402, 4455. *191 Respondent's attempt to apply general accounting concepts in the insurance field can not now be sanctioned for "Congress has seen fit to enact a special statute governing the imposition of tax upon 'insurance companies other than life or mutual * * *'." New Hampshire Fire Insurance Co., supra, at 2 T.C. 722. See 8 Mertens, op. cit., supra. Furthermore, we need not concern ourselves with methods of treatment of these items prior to the base period years. Zellerbach Paper Co., 8 T.C. 511, 524. Respondent does not dispute the general rule that income for the base period years to be used in computing the excess profits tax credit is not the income as previously determined, but is rather the income properly determined. Leonard Refineries, Inc., 11 T.C. 1000. In Rosemary Mfg. Co., 9 T.C. 851, at 858-860, we stated in this respect: "* * * Section 734 of the Internal Revenue Code expressly contemplates that an item affecting the determination of the excess profits credit may be treated in a manner inconsistent with the treatment accorded such item in the determination of the income tax liability *192 of the taxpayer in a prior taxable year. "Section 734 is entitled 'Adjustment in Case of Position Inconsistent with Prior Income Tax Liability.' * * * "In general, this section provides that if, in determining the excess profits tax liability of a taxpayer, an item is treated inconsistently with its treatment in the determination of the income tax liability of the taxpayer for a prior taxable year, and if the item were treated in the determination of the income tax liability of the prior year or years in a manner consistent with its treatment in ascertaining the excess profits tax liability of the taxpayer there would have been an increase or a decrease in the income taxes previously determined for those years, and if at the time of the determination of the excess profits taxes a correction of the effect of the inconsistent treatment in those prior years on the tax liability of the taxpayer is prevented by law, then such a correction, i.e., an increase or decrease in the income tax liability of the taxpayer for the prior years barred by the statute of limitations, shall be made by an adjustment of the excess profits tax either by way of increase or decrease. Subsection 734 (b) *193 (2) provides by way of limitation that 'such adjustment,' i.e., the adjustment to the excess profits tax, 'shall be made only if there is adopted in the determination,' i.e., the determination of excess profits tax, 'a position maintained by the * * * taxpayer * * * (in case the net effect of the adjustment would be an increase in the income taxes previously determined for such year or years) which position is inconsistent with the treatment accorded such item in the prior taxable year or years which was not correct under the law applicable to such year.' "This subsection, it will be noted, is a limitation upon the making of the adjustment in the taxpayer's excess profits tax, and is not a limitation upon the treatment of an item affecting the income tax liability of a taxpayer for a prior year consistently with its treatment in determining the excess profits tax liability of that taxpayer." * * *
In Regulations 112, section 35.734-2(c), it is provided: "* * * Either the Commissioner or the taxpayer * * * may insist upon the correct treatment of such item or transaction in the determination of the excess profits credit * * *." Petitioner, herein, is seeking a correct and *194 consistent treatment in both periods. Respondent argues, however, that this general rule is inapplicable here because of the settlement agreement [4] entered into between the parties, whereby liability for some of the base period years had been settled. But that fact, it is obvious, does not of itself prevent petitioner from now maintaining an inconsistent position. See Internal Revenue Code section 734. If tax liability had been compromised under section 3761 of the Code, no adjustment might be possible under section 734, [5] but that is not this case. Upon this issue, we are not concerned with what adjustment, if any, might result because an inconsistent position is taken; that is a question to be considered later in this opinion. Even if we were, there was no such compromise here, and no closing agreement. Respondent apparently acknowledges the force of these facts, for he seeks to bar petitioner's *195 actions, not by the application of any provisions of the Code, all of which seemingly support petitioner, but rather by a somewhat indirect attempt to introduce the element of estoppel. This, he attempts to do by the citation of such cases as Baldwin v. Higgins, (D.C.S.D.N.Y.), not officially reported, 19 AFTR 1341, affd. on technical grounds (CCA-2), 100 Fed. (2d) 405, and Guggenheim v. United States (Ct. Cls.), 77 Fed. Supp. 186, certiorari denied, 335 U.S. 908. Whatever weight and validity those authorities may have in a proceeding such as this, it is at once apparent that respondent has neither pleaded nor proved the elements of estoppel, Joyce v. Gentsch, (CCA-6), 141 Fed. (2d) 891, and the record presented to us discloses no ground for any claim of estoppel by respondent. See Botany Worsted Mills v. United States, 278 U.S. 282; Atlas, The Doctrine of Estoppel in Tax Cases, 3 Tax L. Rev., 71. Hence, respondent's indirect attempt to employ the doctrine of estoppel must fail. Moreover, respondent's position is not at all advanced by his assertion that petitioner withdrew from the inconsistent *196 position it first sought to take as to the deduction in the base period years for taxes paid. See footnote 1. Petitioner was not required to adopt or maintain such inconsistent position with respect to that item, Regs. 112, section 35.734-2; and timely withdrew, as it properly could, from that position. 1432 Broadway Corporation, 4 T.C. 1158, 1167, affd. (CCA-2) 160 Fed. (2d) 885. It thus must follow that petitioner's position under the second and third issues as to all the years, including 1937, must be upheld. As to the issue of the applicability of section 734 of the Code, the adjustment would be mandatory if it adversely affected petitioner, the party maintaining the inconsistent positions. Since the year 1937, as well as the other base period years, is properly to be considered, such consideration not being foreclosed by the informal settlement of agreement, and since by its consideration a net decrease results, favorable to petitioner, no adjustment under section 734 is required or permitted. Decision will be entered under Rule 50. Footnotes
1. The assignment of error as to the correction for taxes incurred in the base period years, respondent having allowed such deduction on the basis of taxes paid, was withdrawn by petitioner.↩
2. See Tye, Federal Taxation of Insurance Companies and Their Problems, 21 Taxes, 594: Historically, under successive revenue acts until the 1921 Act, insurance companies generally - life, fire, casualty and marine - were taxed in substantially the same way as other types of corporations. * * * In 1921, for the first time, special sections taxing insurance companies were enacted. Thus, at the present time insurance companies are not taxed under the general provisions of the Internal Revenue Code applicable to other corporations. The Congress realized that essential accounting, reserve requirements and business differences made similar treatment next to impossible. * * * These special code sections are intended to reflect taxable income in a manner consistent with existing insurance company accounting and reserve requirements. * * *
See also Regs. 111, section 29.204-1↩
3. Sec. 204 (b) Definition of Income, Etc. - In the case of an insurance company subject to the tax imposed by this section - * * *
(7) Expenses Incurred. - "Expenses incurred" means all expenses shown on the annual statement approved by the National Convention of Insurance Commissioners, and shall be computed as follows: To all expenses paid during the taxable year add expenses unpaid at the end of the taxable year and deduct expenses unpaid at the end of the preceding taxable year. For the purpose of computing the net income subject to the tax imposed by this section there shall be deducted from expenses incurred as defined in this paragraph all expenses incurred which are not allowed as deductions by subsection (c) of this section. (c) Deductions Allowed. - In computing the net income of an insurance company subject to the tax imposed by this section there shall be allowed as deductions: (1) All ordinary and necessary expenses in curred, as provided in section 23 (a):↩
4. No closing agreement was ever executed. ↩
5. "If any income tax liability for a prior taxable year has been compromised under section 3761, no adjustment may be made under section 734↩ with respect to the tax liability compromised." Regs. 112, sec. 35.734-2(b).